UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

NANCY AKBARI-SHAMIRZADI,                                    No. 11-15351 TA

     Debtor.

## **MEMORANDUM OPINION**

Before the Court is the debtor Nancy Akbari-Shahmirzadi's Motion on an Expedited Basis for a Limited Stay, filed November 2, 2014, doc. 275 (the "Stay Motion"). Charlotte Leff, Executrix of the Estate of Jacoby ("Jacoby Estate"), filed an objection on November 5, 2014, doc. 279. The Court held a final hearing on the Motion on November 6, 2014, at which the debtor appeared pro se and the Jacoby Estate appeared through its counsel George Moore. For the reasons set forth below, the Court finds that the Motion is not well taken and should be denied.

I.     FACTS

The Debtor filed a voluntary Chapter 7 bankruptcy case on December 14, 2011. At the time of filing, she owed the Jacoby Estate $866,000, to repay funds she had paid herself from her mother's estate, before a will was found and Ms. Leff appointed the estate's personal representative.[1] The dispute between the Debtor and the Jacoby Estate was hotly contested in New York. The litigation included at least one order that the Debtor be incarcerated for failing to repay the debt as agreed.

---

[1] The will left the Debtor a small fraction of the money she had distributed to herself and her brother, so she had to repay several million dollars to the probate estate. The Debtor repaid most of what she owed, but still owes $866,000.

Three adversary proceedings were filed in the Chapter 7 case, one by the Jacoby Estate (seeking a declaration that its claim is nondischargeable), one by the United States Trustee (seeking denial of the Debtor's discharge), and one by the Chapter 7 trustee (seeking to recover fraudulent transfers and turnover of estate property).

The Debtor filed a Motion to Convert Case from Chapter 7 to Chapter 11 on June 21, 2013, doc. 39.  The Chapter 7 trustee and the Jacoby Estate objected on July 9, 2013, docs. 42 and 43, and the Debtor filed a Reply to Objection to Motion to Convert Case on July 19, 2013, doc. 44 (the "Conversion Motion Reply").  Attached as Exhibit A to the Conversion Motion Reply is a "draft proposed Chapter 11 Plan of Reorganization" (the "Draft Proposed Plan").

In November, 2013, after the case had been pending nearly two years, the Debtor reached an agreement with the U.S. Trustee, the Chapter 7 trustee, and the Jacoby Estate, pursuant to which the case was converted to Chapter 11.  A stipulated conversion order was entered November 22, 2013, doc. 64 (the "Stipulated Conversion Order").  As part of the settlement, the Debtor waived the bankruptcy discharge and agreed to convey into her bankruptcy estate certain real property that was the subject of the Chapter 7 trustee's fraudulent transfer action.

The Debtor's "exclusivity period" set forth in 11 U.S.C. § 1121(c) expired March 24, 2014.[2]  Instead of filing a plan and disclosure statement by the deadline, on the last day the Debtor filed a Motion to Extend Time for Filing of a Final Chapter 11 Plan, doc. 133 (the "Extension Motion").

The Jacoby Estate filed a Plan of Liquidation on April 10, 2014, doc. 138, as well as a disclosure statement, doc 139.

---

[2] The "exclusivity period" is the time during which only the debtor in possession may file and seek confirmation of a plan of reorganization.  11 U.S.C. § 1121(c).

The Jacoby Estate objected to the Extension Motion. On April 15, 2014, the Court entered an Order Resulting from Preliminary Hearing on Debtor's Motion to Extend Time to File Chapter 11 Plan, doc. 145 (the "Order on Extension Motion").

The Debtor filed a Plan of Reorganization on May 5, 2014, doc. 152 (the "Debtor's Initial Plan") and a disclosure statement.

The Debtor filed a motion to reconsider the Order on Extension Motion on May 16, 2014, doc. 162. The Jacoby Estate objected on June 2, 2104, doc. 176. On July 1, 2014, the Court denied the motion, doc. 191.

Eventually amended plans filed by the Jacoby Estate (the "Estate Plan") and by the Debtor (the "Debtor's Amended Plan") were sent out for creditor voting. One creditor voted in favor of the Estate Plan and none against, while one creditor voted against the Debtor's Amended Plan and none in favor.

The Court denied confirmation of the Debtor's Amended Plan on October 22, 2014, doc. 258, and confirmed the Estate Plan on October 27, 2014, doc. 261 (the "Confirmation Order"). The Debtor filed notices of appeal of both plan orders, docs. 266 and 268. The Stay Motion relates to the Confirmation Order.

## II.    DISCUSSION

A.    Stay Pending Appeal.

Federal Rule of Bankruptcy Procedure 8005 provides that a motion for stay pending appeal of a decision by a bankruptcy judge must first be made to the bankruptcy judge. Fed.R.Bankr.P. 8005. The purpose of a stay pending appeal is to preserve the status quo until the appeal is decided. *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 2011 WL 4553071, *1 (D. Kan. 2011) (citing *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir.

1996)).  In ruling on a motion for stay pending appeal, the Court considers the following four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *Nken v. Holder,* 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

The party seeking a stay pending appeal must satisfy all four factors to obtain a stay pending appeal.  *See Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013); *Sunflower Racing, Inc. v. Mid-Content Racing & Gaming Co. I (In re Sunflower Racing, Inc.)*, 225 B.R. 225, 227 (D. Kan. 1998).  Factors one and two—likelihood of success and irreparable harm—are the most critical.  *Nken,* 556 U.S. at 434 (explaining that "[t]he first two factors of the traditional standard are the most critical.").

If the moving party establishes that the other three factors "tip decidedly in its favor," the "probability of success" factor for obtaining a stay pending appeal is "somewhat relaxed." *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003); *F.T.C. v. Foster*, 2007 WL 3023158, at *1 (10th Cir. 2007).  Under the relaxed standard, the movant can satisfy the "likelihood of success" requirement by showing that "questions going to the merits [are] so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Mainstream Mktg.* 345 F.3d at 853 (internal quotations omitted).  Because as set forth below the Debtor failed to demonstrate that any of the other factors tip in her favor, the Court need not apply this more relaxed standard to the likelihood of success requirement.

-4-

B.       Whether Debtor Has Shown She is Likely to Succeed on the Merits.

In the Stay Motion, the Debtor argues the district court is likely to reverse the Court's determination that the Debtor's "exclusivity period" had expired. Stay Motion, p. 2. The Debtor makes two arguments in support of this position.

1.       The Debtor Allegedly Had a Plan on File. The Debtor first argues that the Court's ruling was incorrect because "a Chapter 11 plan had been filed by her prior to the expiration of the period set forth in Section 1121(b)." Stay Motion, p. 2. The Debtor asserts she filed a plan on July 19, 2013, four months before conversion to Chapter 11. Stay Motion, p. 2.

This argument has no merit. The Debtor did not file a plan on July 19, 2014, as she claims. Rather, on that date (while the case was a Chapter 7 case and no plan of reorganization is permitted), the Debtor filed her Conversion Motion Reply, to which she attached the Draft Proposed Plan. She never filed the plan itself, nor a disclosure statement.[3] In fact, the Debtor did not file a plan of reorganization until May 5, 2014, doc. 152, more than eight and a half months later. The plan the Debtor filed on May 5, 2014, the Debtor's Initial Plan, bears little relation to the Draft Proposed Plan.[4]

---

[3] Attaching a proposed court filing to a motion or reply does not constitute filing the document itself. Filing a plan and disclosure statement triggers the confirmation process. The Court sends out a notice of a hearing on the disclosure statement, *see* Bankruptcy Rule 2002(b), the disclosure statement is reviewed, revised, and approved, and a final package, with ballots, is sent out to creditors for voting. None of this was done in connection with the Draft Proposed Plan because, inter alia, the Debtor did not file it, the case was a Chapter 7 case, and the Debtor did not file a disclosure statement.

[4] The Draft Proposed Plan was prepared by Debtor's bankruptcy counsel before the Debtor fired them. It is 41 pages long and is detailed in its definitions, description of classes, proposed treatment of classes, and description of the asset liquidation process. In contrast, the Debtor's Initial Plan is eight pages long and very cursory. Its description of classes is confusing and cryptic, as is the proposed treatment of each class. Certain secured claims are omitted. The liquidation process is not well described. If the agreement to allow conversion to Chapter 11 was based on the Draft Proposed Plan, then the Debtor could be accused of conducting a "bait and switch" by filing the Debtor's Initial Plan instead.

-5-

Further, it makes no sense to file a plan of reorganization in a Chapter 7 case. Had the Debtor actually filed a plan while she was in Chapter 7, she would have had to refile it after conversion to Chapter 11.

The Debtor attached the Draft Proposed Plan to the Conversion Motion Reply, not in an attempt to file the plan but to persuade the Court that conversion was in the best interests of creditors. *See, e.g., In re Meunghee Joung,* 2011 WL 2413633 (Bankr. D.N.M. 2011), citing *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365 (2007) (if a creditor objects to conversion on the basis of bad faith, debtor must demonstrate that she could survive a motion to convert for "cause." One way of doing that is to show how she would propose to reorganize if conversion were allowed).

Finally, even if the Court were to view the Draft Proposed Plan as having been filed on the conversion date (November 22, 2013), the Debtor would have had 180 days to confirm the plan. 11 U.S.C. § 1121(c)(3). That deadline was May 21, 2014. On that date, the Debtor's Initial Plan (presumably superseding the Draft Proposed Plan, under the Debtor's theory) had been on file less than three weeks, and a confirmation hearing was still almost five months away. Even under this unlikely version of events, exclusivity long ago.

In short, the fact that the Debtor attached the Draft Proposed Plan to her Conversion Motion Reply does not aid her quest to find reversible error in the confirmation of the Estate Plan.

        2.    <u>The Court Allegedly Extended Exclusivity</u>. The Debtor also argues that the Court's Order on Extension Motion extended the Debtor's exclusivity period. Stay Motion, p. 2. This argument fails. The Order on Extension Motion states in paragraph 6:

To the extent, if any, the Extension Motion requested an extension of the "exclusivity period" set forth in 11 U.S.C. § 1121(b), the motion is denied.[5]

It is impossible to read the order as extending the exclusivity period set out in 11 U.S.C. § 1121(c).

Case law makes clear that the bankruptcy court has discretion to grant or deny motions to extend exclusivity. *See, e.g., In re Adelphia Commc'ns Corp.,* 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006); *In re New Meatco Provisions, LLC,* 2014 WL 917335, at *3 (Bankr. C.D. Cal. 2014). The decision is fact-specific. *Adelphia Commc'ns,* 352 B.R. at 586. The court may consider multiple factors, including (a) the size and complexity of the case; (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists. *In re Dow Corning Corp.,* 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997); *Adelphia Commc'ns,* 352 B.R. at 587.

By the time the Extension Order was entered, the Jacoby Estate had filed a plan and disclosure statement. The case had been pending a long time, with little movement toward liquidation of assets and payment of creditors. The Court thought the best approach would be to

---

[5] The Court used the "if any" language because there was no mention of exclusivity in the Extension Motion. The Debtor did not ask for an extension of the exclusivity period, but for the Court "to enlarge the time for the submission of the Chapter 11 Plan pursuant to F.R.B.P. Sec. 9006(b)(1)" and "issue an Order extending the time for submission of a Chapter 11 Plan by Debtor." 11 U.S.C. § 1121(c)'s "exclusivity period" was not mentioned, nor was § 1121(d), the Code provision dealing with extensions of the exclusivity period.

-7-

set a deadline for the Debtor to file her plan, then get her plan and the Estate Plan on the same track toward confirmation. That way creditors vote on which plan they liked better. A "competing plan" approach is not possible during a debtor's exclusivity period. The Court therefore exercised its discretion and decided not to extend exclusivity.

For reasons undisclosed to the Court, the Debtor fired her bankruptcy counsel in February, 2014 and elected to proceed in this case *pro se*, even though she admitted in the Extension Motion that she knew nothing about bankruptcy law. That was her decision and her right. Among the results, however, was that she did not file a plan and disclosure statement timely, did not persuade the Court to extend her exclusivity period, filed an obviously inadequate plan and disclosure statement, made no progress toward paying creditors, and ultimately filed a competing plan that was unconfirmable on its face and of no interest to creditors.

The Court has carefully reviewed the docket in this case, the Court filings, and the parties' briefs and other submissions, and has conducted a thorough, independent review of the case law in this area. The Court believes that the chances the Debtor will prevail on appeal are small.

Of course the district court could disagree, but the Court finds that, at a minimum, it is more likely than not the confirmation of the Estate Plan will be upheld on appeal, and that the Court's ruling on the Debtor's exclusivity period likewise will be affirmed.

C.    Whether the Debtor Would Be Irreparably Injured Absent a Stay. It does not appear to the Court that the Debtor would be irreparably injured absent a stay. The Estate Plan proposes to market and sell the Debtor's assets, either until all creditors have been paid or until all of the non-exempt assets have been liquidated. The Debtor's Amended Plan proposed much

the same course of action. The main difference between the two plans is whether the Debtor or a

liquidating trustee gets to control the sales process. However, the Estate Plan provides:

> The Liquidating Trustee shall be free to sell property after Confirmation, subject
> to liens thereon and the provisions of this Plan and any Order of Confirmation,
> and subject to and limited by the terms of the instruments evidencing any such
> liens, including notes secured thereby, except as such pre-petition instruments
> may be expressly modified by the terms of this Plan. Notwithstanding the
> provision, the Liquidating Trustee shall give notice to the Debtor in writing of his
> intent to accept an offer on any piece of real property, and in such notice shall
> inform the Debtor whether the Broker approved by the Court to list property of
> the Liquidating Trust recommends such sale. The Debtor shall have five (5) days
> to file and serve a written objection to such notice of sale. If Debtor files such an
> objection, Debtor must obtain a final hearing on such objection within ten (10)
> days after service of such Notice of sale, and obtain entry of an order prohibiting
> such sale within five (5) days after such hearing. If a timely objection is not filed,
> or if a hearing is not timely held, or if an order prohibiting such sale is not timely
> entered, the Liquidating Trustee may accept such offer and consummate such
> sale. At any hearing on any objection by Debtor to a proposed sale, the Court
> approved Broker listing the property for the Liquidating Trustee may appear and
> testify telephonically, or by affidavit, and the burden of proof shall be on the
> Debtor to show that such sale should not be allowed.

Given this plan provision, the Debtor should be protected from harm.

Another difference between the two plans is who gets the benefit of any net monthly

income from the Debtor's rental property. Although the Court understands why the Debtor

would prefer to retain the monthly income, there is no legal or equitable reason why the creditors

should not, after waiting this long, obtain the benefit of the income stream.

       D.    <u>Whether Issuance of the Stay Would Substantially Injure Other Parties</u>. Granting

a stay would substantially injure the Jacoby Estate and other creditors. The Debtor filed this

bankruptcy case on December 14, 2011, almost three years ago. No creditors have been paid

since the petition date. The Debtor has had every opportunity to reorganize or liquidate, pay

creditors, and keep as much of her property as possible, but her efforts have fallen far short.

Further delay would substantially injure her creditors.

The Debtor argues that the tenants of the rental property would be injured if the liquidating trustee were allowed to take over management of the property. No evidence of this was introduced, and it is not clear to the Court why a professional property management company could not manage the property as well as the Debtor's husband

E.     Where the Public Interest Lies. While there is a public interest in preserving the appeal rights of a litigant, there is also a public interest in paying creditors as much as practicable, as soon as practicable. Entry of a stay would prolong the already lengthy delay in this case. The appellate process could take one or more years. It would not be right to make the Debtor's creditors wait that long before they are allowed to commence liquidation of the Debtor's estate.

In support of the Stay Motion the Debtor argues:

> There would be further confusion because of the fact that the leases and bank account are owned by Mesquite Realty Company, LLC. Pursuant to 59-19-29, 59-19-29, 53-19-35 and 53-19-31 of the New Mexico Statutes, and 28 USC Section 959 (b) the trustee is not allowed to take possession of any property of the LLC.

Stay Motion, p. 4. This is a troubling argument, as the Jacoby Estate points out in its Response.

As part of the Stipulated Conversion Order the Debtor agreed:

> Debtor shall, within ten days of entry of this Order, and in whatever capacity she has an interest in the Subject Property, execute and properly record deeds of all real property and improvements which is subject of that pending Adversary Proceeding No. 12-1035 (the "Subject Property") to the chapter eleven estate (or to herself "as Debtor in possession") in this proceeding. Debtor hereby represents to the Trustee, to the Estate of Jacoby, and to the Court that she is the president of 1417 N. Mesquite Company, Inc., and as such, is authorized and competent to execute an appropriate deed on behalf of such corporation of the tract of real property transferred to it as alleged in Adversary No. 13-1305.

Stipulated Conversion Order, p. 3. The Debtor apparently complied with this obligation, but now admits she went only halfway. The Debtor did not, it seems, transfer the subject leases from

-10-

the name of 1417 N. Mesquite Company, Inc. into her name, nor did she start collecting the monthly rent. Instead, at the final hearing on the Stay Motion the Debtor admitted that she gets half the monthly rent and her non-filing spouse keeps the other half pursuant to an oral "management agreement."

The Debtor's failure to have the rental property leases in her name and collect all of the rent may constitute a breach of her fiduciary duties. The liquidating trustee will correct these problems, with this Court's assistance if necessary.

The public has an interest in ensuring that bankruptcy estate assets are handled properly, for the benefit of creditors and in accordance with law.

### III. CONCLUSION

The Court has given the Debtor every opportunity, in Chapter 7 and Chapter 11, to pay her creditors and get the unfortunate events involving the Jacoby Estate behind her. The result of the Court's indulgence has been three years of unproductive delay. In the meantime, the Debtor has not discharged her basic fiduciary duty to collect and account for estate property. She now asks the Court for a stay, which would cause substantially more delay (and possibly more questions about the proper discharge of fiduciary duty).

The Debtor has not carried her burden on any of the four *Nken v. Holder* factors. The Debtor's request for a stay is not well taken and will be denied.

A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 7, 2014

Copies to:

Nancy Akbari-Shahmirzadi
540 North Mesquite Street
Las Cruces, NM 88001

Bonnie Bassan Gandarilla
3800 Osuna Road NE, Ste. #2
Albuquerque, NM 87109