UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

NANCY AKBARI-SHAMIRZADI,   Case No. 11-15351-ta7

Debtor.

## MEMORANDUM OPINION

Before the Court is a motion to approve a settlement of the estate's claims against one of the Debtor's former lawyers. The Debtor objected to the settlement, arguing that the estate has a valuable malpractice claim against the attorney, so the proposed consideration is inadequate. The movant disagrees, asserting that the malpractice claim is worthless. The Court held a final hearing on the motion on April 10, 2015. For the reasons set forth below the Court will approve the settlement.

I. FACTS

The court finds[1] the following facts:[2]

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Debtor commenced this case as a voluntary Chapter 7 case on December 14, 2011.[3] Debtor's major creditor, the Estate of Eleanor Jacoby (the "Jacoby Estate")[4] promptly filed an adversary proceeding seeking a determination that its debt was nondischargeable, and also objecting to entry of a general discharge. The United States Trustee's office ("UST") filed a separate § 727 proceeding.[5]

Debtor's attorney, Steven "Tal" Young ("Young"), filed a motion to convert the case to Chapter 11 on June 21, 2013. The case trustee and the Jacoby Estate objected, and over the next several months Young negotiated a settlement of the contested matter. A settlement was reached and the following terms were read into the record at an October 8, 2013 hearing:

- Debtor would waive her Chapter 7 discharge;
- The case would be converted to Chapter 11;
- Debtor would waive her Chapter 11 discharge;
- Debtor would not object to the validity of the Jacoby Estate claim, but reserved the right to verify the claim amount, as there might have been uncredited payments;
- Debtor reserved the right to object to the interest rate of the Jacoby Estate claim;
- Debtor, in her capacity as managing member of limited liability companies she owns, would sign deeds conveying five parcels of improved real property in Las Cruces, New Mexico (two commercial properties, two rental properties, and her personal residence) to the bankruptcy estate, within ten days after conversion to Chapter 11 (together, the "Real Property");
- Debtor would employ Thomas Whatley of Steinborn & Associates to market the Real Property;
- The order of conversion would represent that Debtor has in her possession all of the personal property sought in the turnover action (12-1021), which would be stayed but not dismissed.
- The Jacoby Estate's § 523/727 adversary proceeding would be dismissed;

---

[3] Steve Mazer was Debtor's counsel when the case was filed. The Debtor terminated Mr. Mazer's services and then retained Steven "Tal" Young and Ron Holmes in about June, 2013. Young entered his appearance in the Chapter 7 case on June 24, 2013. He apparently received a $12,000 retainer. No order authorizing the estate to employ Young was ever entered.

[4] The Jacoby Estate's unsecured claim was about 70% of the unsecured claims pool when a plan of liquidation was confirmed in this case.

[5] Unless otherwise stated, all statutory references are to Title 11 of the United States Code.

- The U.S. Trustee's § 727 adversary proceeding would be dismissed;
- If the case were reconverted, the same Chapter 7 trustee would be reappointed;
- Any plan of reorganization/liquidation the Debtor filed would contain the following provisions:
  - The Debtor would follow Mr. Whatley's recommendations about pricing and marketing the Real Estate;
  - The Debtor would agree to reductions to the listing prices if the properties did not sell within six to nine months;
  - The Debtor would agree to minimum acceptable prices for each parcel;
  - Within ten days of the sale of any parcel of Real Property, the Debtor would distribute the net proceeds to creditors, pro rata;
  - The Debtor agreed to payment of reasonable Chapter 7 trustee fees, and also to reasonable compensation to the Chapter 7 trustee's counsel. Such fees would be paid on confirmation;
  - If there was a surplus after paying unsecured creditor claims, unsecured creditors would be paid interest at .18%; and
  - The Debtor's personal residence would be sold only if the other property did not sell for enough to pay creditors in full. Pricing for the Debtor's house would follow the same procedure as price for the other real estate (i.e. dropping price after six to nine months).

At the hearing, Young said he would get a plan filed "fairly soon," albeit after he had set a bar date and sought to retain an accountant.

On November 13, 2013 the Court entered a Stipulated Order on Debtor's Motion to Convert Case to a Case Under Chapter Eleven. Nine days later the Court entered a Stipulated Order Converting Case to a Case Under Chapter Eleven. The orders reflect many but not all of the terms agreed to at the October 8, 2013 hearing.[6]

The Debtor's reorganization faltered after conversion to Chapter 11. She and Young parted ways, acrimoniously, on February 22, 2014.[7] She decided to continue *pro se*. She did not file an application to retain Mr. Whatley until March 6, 2014, almost five months after the

---

[6] For example, the agreement about what Debtor's plan would contain is not in the orders.
[7] Ronald Holmes, another lawyer Debtor had sought to retain in this case, moved to withdraw on February 22, 2014 also. After termination, Young applied his $12,000 retainer to his fees.

settlement hearing. She never sought to fix a bar date or retain an accountant. Her operating reports did not contain adequate information. Perhaps most importantly, she did not file a plan of reorganization by March 24, 2014, so her § 1121(c)(2) "exclusivity" period expired.[8]

On April 10, 2014, the Jacoby Estate filed a liquidating plan. Debtor filed a plan on May 5, 2014. Both plans were amended and ultimately sent out to creditors for voting. Debtor's plan received no accepting votes and could not be confirmed. The Court confirmed the Jacoby Estate's Plan on October 27, 2014. Under the plan, Philip Montoya was appointed the Liquidating Trustee (the "Trustee") of the Debtor's bankruptcy estate.

The Debtor asserts that Young committed malpractice while representing her. She gives the following instances of alleged malpractice:

- He did not advise her that property held by a limited liability company ("LLC") could not be reached by the creditors of an LLC's member;
- He did not tell her that the case could be reconverted to Chapter 7, and/or did not insist that reconversion be prohibited as part of the settlement;
- He did not tell her that another party would be able to file a plan of liquidation in her case when the "exclusivity" period set out in § 1121(c)(2) ends. She apparently was under the impression that she should have had the exclusive right to file and confirm a plan; and
- He neglected to insist on a settlement term that the Real Estate must continue to be managed by her husband's management company, Mesquite Realty LLC.

The Trustee reviewed the allegations and disagrees with the Debtor. In his view:

- The LLC assets in question could be obtained using the fraudulent transfer statutes;
- He never would have agreed to a bar on reconversion;
- He never would have agreed that only Debtor could file a plan of reorganization or liquidation;
- He had a very strong opposition to Debtor's motion to convert, and

---

[8] On March 24, 2014, Debtor filed a Motion to Extend Time for Filing of a Final Chapter 11 Plan. Nowhere in the motion did the Debtor ask that exclusivity be extended. The Jacoby Estate had filed a plan before the hearing on the motion to extend. At the hearing, the Court set deadlines for the Debtor to file a plan, so that her plan and the Jacoby Estate plan could be on the same confirmation track. The Court did not extend the § 1121(c)(2) exclusivity period.

-4-

would not have given up more than he did to settle the conversion motion; and
- With respect to the agreement to sell Debtor's house last, that was a term of the deal even if not reflected in the Conversion Order, and in any event is part of the plan of liquidation.
- The Debtor would be a poor witness, lacking credibility;
- It would be difficult to retain a good lawyer on any basis, especially on a contingent fee. The claim is too weak to pursue on an hourly basis;
- The estate would have to retain a good expert witness, which would be hard to do and very expensive;
- The estate does not have much ready cash to devote to a lawsuit;
- The Debtor suffered no damages because of Young's actions or inactions.

According to the Trustee's counsel, at one point Debtor urged the Trustee to pursue the malpractice claim because Young had insurance.[9] The Trustee's counsel testified that he would never bring a meritless claim simply to "get some of the insurance company's money."

The Trustee negotiated with Young about the estate's outstanding claims against him and reached an agreement, subject to Court approval. Under the settlement, Young would pay the estate $12,000 in full satisfaction of all estate claims against Young, including the claim for the $12,000 retainer, the Fed.R.Bankr.P 2017 claim for the return of "excessive" payments, and any malpractice claims.

Debtor objects to the proposed settlement because it releases any malpractice claims. She believes such claims have substantial value, not adequately reflected in the settlement price of $12,000.

---

[9] The Debtor did not dispute this assertion.

The Trustee offered several times to sell Debtor all of the estate's claims against Young.[10] Surprisingly, the Debtor declined to offer even $12,001, saying she was "not interested."[11] The Debtor insists, nevertheless, that the Trustee pursue the malpractice claim.

The UST also objected to the settlement to the extent it would preclude the UST from reviewing and possibly objecting to Young's attorney fees charged to the estate in this case. That objection has been resolved.

## II. DISCUSSION

### A. Rule 9019(a).

Federal Rule of Bankruptcy Procedure 9019(a) "allows a court, after notice and a hearing, to approve a compromise or settlement of a claim belonging to the bankruptcy estate, including a debtor's cause of action against a third party." *In re Brutsche*, 500 B.R. 62, 70 (Bankr. D.N.M 2013). "Compromises are favored in bankruptcy." 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993). "The purpose behind compromises 'is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.'" *Korngold v. Loyd (In re S. Med. Arts Cos. Inc.)*, 343 B.R. 250, 255 (10th Cir. BAP 2006) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986)).

The party seeking approval of a compromise bears the burden of showing "that the proposed settlement is fair, equitable, and in the best interests of the estate." *In re Brutsche*, 500 B.R. at 70. A court's decision to approve a compromise "must be an informed one based upon

---

[10] The Liquidating Trustee proposed that, if Debtor agreed to pay $12,001 for all claims, an auction could be arranged whereby the Debtor could bid against Young for the claims.

[11] In her email correspondence with the Trustee, Debtor stated that she did not have the money to buy the claim. In her testimony, however, she stated that she could raise the money if needed, but that she was not interested in buying the claims.

an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). However, the Court need not engage in a mini-trial addressing the merits of the proposed compromise. *See Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68, 71–72 (1st Cir. 2004) (the responsibility of the bankruptcy judge is to canvass the issues and see whether the settlement is within the range of reasonableness).

  B. The *Kopexa* Factors.

In approving a compromise under Rule 9019(a), a court must consider "(1) the probable success of the underlying litigation on the merits, (2) the possible difficulty in collection of a judgment, (3) the complexity and expense of the litigation, and (4) the interests of creditors in deference to their reasonable views." *Kopp v. All Am. Life Ins. Co., (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997) (citations omitted); *In re Log Furniture, Inc.*, 257 Fed. Appx. 101, 103 (10th Cir. 2007) (citing *In re Kopexa*).

  1. Probability of Success. The estate's malpractice claim against Young has a number of substantial problems, including:

- Young faced a difficult situation when he was retained in the case. He had a weak negotiating position because of Debtor's pre- and post-petition conduct. Young ended up with what appears to be a reasonable agreement, all things considered;
- The Debtor, who would have to be the estate's main witness, lacks credibility and likely would not appeal to a state court judge or jury;
- The Debtor, an attorney, would be held to a higher standard than most clients;
- The Debtor retained and then fired three bankruptcy lawyers;
- It is difficult to see how the estate would be able to prove any substantial damages;
- It would be hard to find a good lawyer to take the case on a contingent fee;
- Finding and paying an expert witness would not be easy;
- The Debtor's actions after firing Young caused most or all of her problems, e.g., failing to file a plan within her exclusivity period.

The Debtor's refusal to purchase the claim herself, even though she testified that she could obtain the funds to do so, further highlights the claim's weakness. The Court is persuaded

that the probability of success in litigation on the merits is quite low.[12] This factor weighs in favor of settlement.

      2.      <u>Collection Risk</u>. If the estate got a judgment against Young, collection should not be difficult because of Young's professional liability insurance. This factor weighs against the settlement.

      3.      <u>Complexity and Expense</u>. The malpractice claim against Young is fairly complex. The reasonableness of Young's advice and conduct is open to interpretation. This is particularly true given that the Debtor is an experienced attorney (albeit not a bankruptcy lawyer), and would be held to a higher level of knowledge and sophistication than the average client. For example, Debtor's argument that Young should have told her that LLC assets are not available to creditors of LLC members is substantially weakened by the fact that she should have known it anyway—it is an elementary facet of corporate law. Similarly, Debtor should have read the Conversion Order and made sure it contained all the settlement terms important to her.

Proof of damages would be complicated and problematic. The Trustee would have to argue, in effect, that his efforts to liquidate estate assets will result in a lower return than if the Debtor had remained in control; a difficult position to take, and completely at odds with the Trustee's actual view. Further, the difference would have to be quantified.

Litigation would be expensive. It is unlikely that a good malpractice attorney would take the case on a contingency, so the estate likely would have to pay a lawyer by the hour.[13] In addition, the estate would have to retain an expert witness. Finding such an expert would be difficult and expensive.

---

[12] The Court agrees wholeheartedly with Trustee's counsel that no claim should ever be asserted simply because the target is insured.

[13] The Debtor argues she could litigate the case herself. The Court believes it would be very inadvisable for the estate to retain the Debtor to pursue the claim.

Overall, the court finds that this factor weighs in favor of settlement.

4. <u>Interests of Creditors</u>. The largest creditor in the case favors the proposed settlement. No other creditor expressed a view. This factor weighs in favor of the settlement.

Taken as a whole, the *Kopexa* factors decidedly weigh in favor of the proposed settlement. Any judgment obtained likely would be collectible, but the remaining factors favor settlement. Given all of the evidence, the Court is convinced that the malpractice claim is of little or no merit and has little or no value. Such claims are burdensome and stressful for all parties and should not be brought unless they have substantial merit, with substantial damages.

If the Debtor wanted to preserve the claims against Young, she should have bought them from the Trustee. She chose not to, for reasons that are difficult to fathom. Debtor cannot be heard to complain when the Trustee makes the same decision she did.

### III. <u>CONCLUSION</u>

Of the four *Kopexa* factors, three weigh strongly in favor of settlement. Based on this analysis, the Court finds that the proposed settlement with Young is fair, equitable, and in the best interest of creditors. A separate order will be entered approving the settlement.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 15, 2015

Copies to:

George M Moore
3800 Osuna Rd NE, Ste. #2
Albuquerque, NM 87109

Nancy Akbari-Shahmirzadi
540 North Mesquite St.
Las Cruces, NM 88001

Alice Nystel Page
P.O. Box 608
Albuquerque, NM 87103